Laura Murray-Tjan, Esq. (BBO#649609)
Federal Immigration Appeals Project
6 Beacon Street, Suite 900
Boston, MA 02108
Tel. (617) 580-1717
Fax (617) 500-9928
Email laura@fiapboston.com

Margaret Stock, Esq (AK Bar No. 9306036)
Cascadia Cross Border Law Group, LLC
4141 B Street, Suite 205
Anchorage, AK 99503
Tel. (907) 242-5800
Fax. (360) 676-5459
Email mstock@cascadialawalaska.com
*[Pro Hac Vice Application Pending]*

Attorneys for Petitioner

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| VICKY INDRAVADAN THAKKAR, DDS | ) ) ) | Case No. 18-11323 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | **COMPLAINT FOR MANDAMUS,** |
| UNITED STATES OF AMERICA | ) ) | **ADMINISTRATIVE PROCEDURE ACT, EQUITABLE ESTOPPEL,** |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY | ) ) ) | **DECLARATORY, PRELIMINARY AND PERMANENT INJUCTIVE RELIEF, AND BREACH OF** |
| 3801 Nebraska Avenue, NW Washington, DC 20016, | ) ) ) | **CONTRACT** |
| KIRSTJEN NIELSEN, Secretary of the United States Department of Homeland Security, 3801 Nebraska Avenue, NW Washington, DC 20016; | ) ) ) ) ) ) ) | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES 20 Massachusetts Avenue, NW | ) ) ) | |

1

Washington, DC 20529,                                    )
                                                         )
L. FRANCIS CISSNA,                                       )
Director of the United                                   )
States Citizenship and Immigration Services )
20 Massachusetts Avenue, NW                              )
Washington, DC 20529,                                    )
                                                         )
DENIS RIORDAN                                            )
District 1 District Director of United States            )
Citizenship and Immigration Services;                    )
John F. Kennedy Federal Building,                        )
15 New Sudbury Street, Room E-160,                       )
Boston, MA 02203                                         )
                                                         )
MIKE MCCLEARY,                                           )
Field Office Director of United States                   )
Citizenship and Immigration Services                     )
John F. Kennedy Federal Building,                        )
15 New Sudbury Street, Room E-160,                       )
Boston, MA 02203                                         )
                                                         )
UNITED STATES DEPARTMENT OF                              )
DEFENSE,                                                 )
1000 Defense Pentagon                                    )
Washington, DC 20301,                                    )
                                                         )
JAMES MATTIS,                                            )
Secretary of Defense of the United States               )
Department of Defense,                                   )
1000 Defense Pentagon                                    )
Washington, DC 20301,                                    )
                                                         )
ROBERT WILKIE,                                           )
Under Secretary of Defense for Personnel                )
and Readiness,                                           )
1000 Defense Pentagon                                    )
Washington, DC 20301,                                    )
                                                         )
                       Defendants.                       )


## COMPLAINT FOR MANDAMUS, ADMINISTRATIVE PROCEDURE ACT, EQUITABLE ESTOPPEL, DECLARATORY, PRELIMINARY AND PERMANENT INJUCTIVE RELIEF AND BREACH OF CONTRACT

Plaintiff, Vicky Indravadan Thakkar, by and through counsel, alleges and complains of Defendants as follows:

## I.      PARTIES

1.      Plaintiff Vicky Indravadan Thakkar (hereinafter, "Plaintiff" or Dr. Thakkar) is a citizen of India.  He resides in Medford, Massachusetts.  He was recruited into, and honorably serves in, the Armed Forces of the United States, and he has applied for United States citizenship.

2.      Defendant United States of America (hereinafter "USA") has contracted with Plaintiff and is responsible for the official acts of each of the other Defendants.

3.      Defendant United States Department of Homeland Security (hereinafter "DHS") is the Department of the Government of the United States responsible for the administration and enforcement of the immigration and citizenship laws of the United States.

4.      Defendant Kirstjen Nielsen (hereinafter, "Secretary Nielsen") is the Secretary of DHS.  As Secretary of DHS, Secretary Nielsen is responsible for the administration of DHS, and the management and supervision of United States Citizenship and Immigration Services, and those agencies' subordinate employees and agents.  She is responsible for ensuring those agencies' compliance with the immigration and citizenship laws of the United States.  Secretary Nielsen is sued in her official capacity only.

5.      Defendant United States Citizenship and Immigration Services (hereinafter "USCIS") is a subordinate agency of DHS and is, among other things, responsible for the overall administration and the implementation of the naturalization laws of the United States.

6.      Defendant L. Francis Cissna (hereinafter, "Cissna") is the Director of USCIS.  As Director of USCIS, Cissna is responsible for the overall administration of USCIS and managing

its subordinate employees and agents, and the implementation of the naturalization laws of the United States.  Cissna is sued in his official capacity only.

7.      Defendant Denis Riordan (hereinafter, "Riordan") is the Director of USCIS District 1.  As District 1 Director, Riordan is responsible for managing and supervising District 1 subordinate Field Offices, including the Boston, Massachusetts USCIS Field Office and the employees and agents working there as well as the administration and implementation of the immigration laws of the United States in that portion of the State of Massachusetts.  Riordan is sued in his official capacity only.

8.      Defendant Mike McCleary (hereinafter "McCleary") is the Field Office Director of the Boston Field Office of USCIS.  As Field Office Director, McCleary is responsible for the administration and implementation of the immigration laws of the United States within that portion of the State of Massachusetts in which Plaintiff resides.  McCleary is sued in his official capacity only.

9.      Defendants DHS, Secretary Nielsen, USCIS, Cissna, Riordan, and McCleary are collectively referred to as "DHS Defendants."

10.     Defendant United States Department of Defense (hereinafter "DOD") is responsible for the overall administration of the military policy of the USA, which includes, among other things, the recruitment of, and contracting with, people who enlist in the United States Armed Forces.

11.     Defendant James Mattis (hereinafter "Secretary Mattis" or "General Mattis") is Secretary of Defense of the United States Department of Defense.  Secretary Mattis is responsible for the administration of DOD, and the management and supervision of all DOD subordinate employees and agents.  Secretary Mattis is sued in his official capacity only.

12.     Defendant Robert Wilkie (hereinafter "Wilkie") is Under Secretary of Defense for Personnel and Readiness at DOD.  Wilkie is responsible for the administration of the DOD offices, subordinate employees, and agents that manage the recruitment of, and contracting with, soldiers. Wilkie is also responsible for recent DOD policy changes that have harmed the Plaintiff.  Wilkie is sued in his official capacity only.

13.     Defendants DOD, Secretary Mattis, and Under Secretary Wilkie are collectively referred to as "DOD Defendants."

## II.     JURISDICTION

14.     This action arises under 8 U.S.C. § 1440 [Immigration and Nationality Act ("INA") § 329].  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 [Federal Question], 1346 [United States as Defendant for claim not exceeding $10,000], 1361 [Mandamus], and 2201 et seq, [Declaratory Judgment], 5 U.S.C. § 701 et seq. [Administrative Procedures Act], and 28 U.S.C. § 1651 [All Writs].

## III.     VENUE

15.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(e)(3), in that this is an action against officers of the United States acting in their official capacities, brought in the District where the Plaintiff resides.

16.     Plaintiff resides in Medford, Massachusetts, within the District of Massachusetts, and is subject to the jurisdiction of this Court.

17.     All Defendants live, work, operate, or function within the District of Massachusetts.

18.     Plaintiff designates Boston, Massachusetts as the location for trial.

## IV.    EXHAUSTION OF REMEDIES

19.    Plaintiff is not required to exhaust any administrative remedies prior to bringing an action under the Administrative Procedures Act, or for a writ of mandamus, or for breach of a military enlistment contract.

20.    This is a complaint necessitated by the fact that DHS Defendants refuse to process Plaintiff's naturalization application.  DHS Defendants do not provide any effective administrative mechanism to address delays in naturalization.  DOD Defendants have caused DHS Defendants to depart from the law in the processing of naturalization applications for military personnel.  DOD Defendants and DHS Defendants are causing Defendant USA to breach an enlistment contract that has naturalization as a material term.

## V.    PURPOSE OF ACTION

21.    Dr. Thakkar seeks his naturalization as a citizen of the United States of America. Dr. Thakkar applied for citizenship in September 2016 based on his honorable service in the Armed Forces of the United States.  Dr. Thakkar was required to apply for naturalization as a United States citizen as a term of his enlistment contract.  Dr. Thakkar's application was received by DHS and USCIS on September 21, 2016.

22.    DHS Defendants have yet to schedule Dr. Thakkar for a naturalization interview.

23.    DHS Defendants have a duty to adjudicate Plaintiff's naturalization application in a reasonable and timely manner.  DHS Defendants have failed to fulfill this duty.

24.    DOD Defendants have actively thwarted Dr. Thakkar's naturalization.  DOD Defendants have created and applied additional hurdles to the naturalization of their alien soldiers, and these hurdles have no basis in law.  These unlawful hurdles to naturalization have caused

Defendant USA to breach the enlistment contract with Dr. Thakkar that DOD entered into on behalf of Defendant USA.

25.     Plaintiff seeks injunctive relief, pursuant to the Administrative Procedures Act, 5 U.S.C. § 555, the Mandamus Act, 28 U.S.C. § 1361, and the All Writs Act 28 U.S.C. § 1651 from the unreasonable delays by DHS Defendants and requiring them to adjudicate his application for naturalization in a timely and lawful manner.

26.     Plaintiff seeks injunctive relief, pursuant to the Administrative Procedures Act, 5 U.S.C. § 555, the Mandamus Act, 28 U.S.C. § 1361, and the All Writs Act, 28 U.S.C. § 1651, directing the DOD Defendants to cease and desist their unlawful interference with Dr. Thakkar's naturalization.

27.     Plaintiff seeks specific enforcement of his enlistment contract.   Specific enforcement would include: a) the timely processing of his naturalization application by DHS Defendants in accordance with law; b) the cessation of all interference and non-cooperation with the naturalization application process by DOD Defendants; c) naturalization upon successful completion of the naturalization application process; and d) commissioning as a Captain in the United States Army Reserve upon naturalization.

28.     Plaintiff seeks damages for the past and ongoing breach of his enlistment contract in an amount not to exceed $10,000.  Specifically, Plaintiff seeks the pay differential between an Army Captain and an enlisted Specialist Fourth Class over the term of Dr. Thakkar's service, which is the measure of damages sought, with a top limit of $10,000.

29.     Plaintiff seeks attorney's fees and costs as well as all other relief the Court deems just and equitable.

## VI.   LEGAL FRAMEWORK

### Naturalization through Honorable Military Service

30.     Federal immigration law allows the naturalization of a person who serves or has served honorably for one day as an active duty or Selected Reserve member of the Armed Forces of the United States during any period which the President by Executive order has designated as a period in which the Armed Forces of the United States are or were engaged in military operations involving armed conflict with a hostile foreign force.  There is no length of residency or length of service requirement.  Nor is the person required to be a lawful permanent resident. 8 U.S.C. § 1440 [INA § 336].

31.     A "wartime" military service naturalization applicant must prove service in the Armed Forces of the United States by a duly authenticated certification from the executive department under which the applicant is serving.  8 U.S.C. § 1440(b) [INA § 329(b)].  DOD executes this ministerial certification on USCIS Form N-426.

32.     Except in circumstances not applicable here, such an applicant must meet the other requirements for naturalization, such as good moral character, the ability to speak and understand English, and knowledge of United States history.  8 U.S.C. § 1423 [INA § 312].  All candidates for "wartime" military naturalization must demonstrate "good moral character" in the year prior to their application.  Only one year of "good moral character" is required.

33.     On July 3, 2002, the President of the United States designated by executive order that the War on Terrorism is a period of hostilities, and noncitizens serving honorably in the Armed Forces of the United States on or after September 11, 2001 are authorized to naturalize.  That Order remained in effect in September of 2016 and remains in effect as of the date of this filing.  8 U.S.C. § 1440 [INA § 329].

34.     Congress has not authorized the DOD Defendants, or any of them, to impose additional burdens upon, or requirements for, naturalization.

**Military Accessions Vital to the National Interest**

35.     To enlist in the Armed Forces of the United States, an applicant typically must be a permanent resident or United States citizen.  The Secretary of Defense is authorized to enlist other persons without such status if such enlistment is vital to the national interest.  10 U.S.C. § 504(b).

36.     In 2008, DOD authorized the Military Accessions Vital to the National Interest ("MAVNI") recruitment program to enlist such "other persons," such as those holding an "H1B" employment visa.

37.     The MAVNI program is designed to secure the medical, technical, linguistic, and intelligence expertise of foreign nationals for service in the Armed Forces of the United States.

38.     On behalf of Defendant USA, DOD promised MAVNI recruits (all of whom must speak English) of good moral character and knowledgeable about and dedicated to the United States, United States citizenship in return for their service in the Armed Forces of the United States. In fact, as a term of their enlistment contracts, MAVNI recruits are required to apply for naturalization as United States citizens.

39.     Until October 2017, officer MAVNI recruits were promised United States citizenship prior to being commissioned and beginning their Basic Officers Leadership Course. Medical officer MAVNI recruits do not go through enlisted basic training.

40.     Until October 2017, MAVNI recruits' enlistment contracts required them to apply for naturalization as soon as they reported for one weekend of Reserve duty.  Such applications

(on USCIS Form N-400) were made as soon as the service branch certified their honorable service on USCIS Form N-426.

## Naturalization and Longstanding National Policy

41.     DHS and USCIS have official policies, procedures, and regulations for the way that naturalization applications must be filed and how they must be adjudicated by DHS.  DHS and USCIS have an official policy of encouraging immigrants to apply for citizenship as soon as they are eligible.  Officially, DHS and USCIS claim that military naturalization cases are "expedited"—meaning that they are allegedly processed faster than ordinary, civilian naturalization applications.

42.     DOD Defendants have not been delegated any power to make official policies, procedures, and regulations for the way that naturalization applications must be filed and how or when they must be adjudicated by DHS Defendants, or what standards govern the grant of naturalization.

43.     DHS Defendants, and each of them, are charged with the fair and faithful execution of the naturalizations laws of this country and the policy favoring citizenship.

## VII.    FACTS PARTICULAR TO THIS CASE

44.     Dr. Thakkar is a 29-year-old native and citizen of India.

45.     Dr. Thakkar graduated with a bachelor of dental surgery (BDS) degree from Dharamsinh Desai University, Nadiad, India in 2010.

46.     Dr. Thakkar lawfully entered the United States on August 17, 2010 to attend school at Fairleigh Dickinson University in Teaneck, New Jersey.  He was admitted to the United States on an "F-1" student visa.

47.     Dr. Thakkar applied to dental schools in the United States and secured admission to Columbia University College of Dental Medicine.   Dr. Thakkar graduated from Columbia University in 2014 as a doctor of dental surgery (DDS).

48.     Upon graduation, Dr. Thakkar obtained work in conformance with USCIS' Optional Practical Training ("OPT") program.[1]

49.     Dr. Thakkar also applied for and received H1B "non-immigrant" worker status.

50.     Dr. Thakkar's first H1B was issued on May 14, 2015.  His current H1B was issued on November 22, 2016.

51.     Dr. Thakkar practices dentistry in the State of Massachusetts.

52.     Dr. Thakkar learned of the MAVNI program through a colleague.  Having a non-immigrant visa and desired skill set (dentistry), Dr. Thakkar was eligible for the MAVNI program.

53.     Dr. Thakkar signed a MAVNI enlistment contract with Defendant USA on November 12, 2015 as an "Army Legal Immigrant Healthcare Professional Officer Candidate."

54.     The MAVNI enlistment contract caused Dr. Thakkar to reasonably rely upon its statements and inducements, including, but not limited to: "I am enlisting during a period of time

---

[1] 8 C.F.R. § 214.2(f)(10) provides that certain students in F-1 status can engage in "practical training"—authorized work that F-1 students may perform related to their major areas of study.  OPT is temporary employment that is directly related to an F-1 student's major area of study.  Eligible students can apply for OPT with USCIS to receive up to 12 months of OPT employment authorization before or after completing their academic studies and they retain their F-1 visa status while performing OPT.  OPT gives the F-1 student temporary employment authorization.  The only relevance of this information to this suit is that Dr. Thakkar lawfully remained and worked in the United States after graduation and before getting his non-immigrant work visa.

in which any alien who serves honorably as a member of the Selected Reserve of the Ready Reserve or in an active-duty status in the military, air, or naval forces of the United States may apply for United States citizenship (8 U.S.C. 1440)."

55.     The MAVNI enlistment contract required Dr. Thakkar to apply for naturalization: "I agree to apply for U.S. citizenship as soon as the Army has certified my honorable service. I understand that the Army does not grant U.S. citizenship, and the Army does not guarantee that my application for U.S. citizenship will be approved.  I understand that I must file my U.S. citizenship application with the Department of Homeland Security under the laws and regulations that govern such applications.  I agree to inform my commander if my application for U.S. citizenship is not approved."

56.     Given his dental training, Dr. Thakkar was promised that he would be commissioned as an officer, specifically, a Captain.

57.     Dr. Thakkar took his service oath on November 12, 2015.

58.     Dr. Thakkar began serving with the 455th Dental Company in Fort Devens, Massachusetts, as a Specialist (E-4) in September 2016, and continues to serve honorably with his unit. He must serve as an E-4 until he is naturalized as a United States citizen.

59.     Dr. Thakkar submitted his N-400 Application for Naturalization in September 2016, and USCIS received that naturalization application on or before September 21, 2016.  On September 11, 2016, Dr. Thakkar's Company Commander, Lieutenant Coloner Edwardo Olegario

signed Form N-426 certifying Dr. Thakkar's honorable service.   USCIS received that N-426 certification.[2]

60.     Plaintiff's N-400 and N-426 were in proper form, and were properly filed.

61.     On or about October 17, 2016, the USCIS background check for naturalization was initiated for Dr. Thakkar and he had his biometrics taken at a USCIS Application Support Center in Revere, Massachusetts.

62.     On October 28, 2016, Dr. Thakkar called the USCIS military helpline, and was told that his citizenship application was pending and being worked on.

63.     As of the filing of this suit, Dr. Thakkar has not been scheduled for a naturalization interview.

64.     On March 16, 2017, Dr. Thakkar called the USCIS military helpline again and was informed that since he is not on active duty and has not been to basic training yet, his file would be placed on hold because DOD had halted processing of Selected Reserve naturalization applications, pursuant to a September 30, 2016 memorandum. This information was nonsensical because Army MAVNI doctors do not attend "basic training."

---

[2] An additional N-426 was submitted on November 4, 2017, signed by Colonel John C. McCabe.

65.     The same date, Dr. Thakkar emailed the USCIS military information e-mail, asking why his application was placed on hold.  The same officer with whom he spoke with on the phone, NM 1637, answered the email, and stated that Dr. Thakkar should contact his commanding officer.

66.     Dr. Thakkar's immigration attorney contacted John J. Sheehy III, U.S. Army Recruiting Command, on behalf of Dr. Thakkar.  On May 2, 2017, Mr. Sheehy responded, saying that all naturalization applications were on hold at USCIS for MAVNI soldiers.

67.     Dr. Thakkar contacted U.S. Senator Elizabeth Warren for assistance.  A person named Ulvanney J. Alford informed Senator Warren's office that Dr. Thakkar's DOD background investigation must first be completed before he could be naturalized.  Mr. Alford further stated that Dr. Thakkar's background investigation was not complete.

68.     Dr. Thakkar has also visited the USCIS Boston Field Office in person twice. On January 20, 2018, Dr. Thakkar was told by a USCIS officer that his FBI checks had been completed since January 2017. The officer told Dr. Thakkar he would request for Dr. Thakkar's file to be sent to the field office from the USCIS National Benefits Center. Then, on January 22, 2018, the same officer called Dr. Thakkar stating that the background check was still pending and that his file would not be sent to the field office yet. On March 19, 2018, Dr. Thakkar was again told that his case was on hold due to pending background checks.

69.     After Dr. Thakkar's enlistment, DOD suddenly decided to conduct new, special background investigations of all MAVNI recruits.   The change was ostensibly for military purposes related to security clearances.

70.     Like other military recruits, MAVNI recruits have always been required to undergo background investigations.   MAVNI recruits are not eligible for security clearances, however, until they are naturalized as U.S. citizens.   Different investigations are undertaken for different security clearance levels.   The Single Scope Background Investigation ("SSBI" or "Tier 5") in the military is usually reserved for persons requiring a Top Secret security clearance and access to sensitive compartmented information ("SCI").   A lower level check is typically required for those in the military seeking a Secret, Confidential, or lesser security clearances.   Military dentists typically do not require a "Top Secret" security clearance. Dr. Thakkar's SSBI was completed on May 17, 2017.

71.     Since 2012, all MAVNI recruits have been required to undergo an SSBI and National Intelligence Agency Check ("NIAC"), regardless of the security clearance eligibility or lack thereof.   The SSBI reviews ten years of personal background information and requires a personal subject interview and interviews of the subject's relatives, neighbors, employers, education, and others.   Local law enforcement record checks are also conducted where the applicant has resided, been employed or attended school for the previous ten years.

72.     On September 30, 2016 DOD issued a memorandum requiring even deeper background investigations (including polygraphs) for all MAVNI recruits, and initiated a new requirement called a Counterintelligence Security ("CI-Security") review.  The CI-Security review includes a personal interview often performed at a central facility, requiring MAVNI recruits to travel to that location. Dr. Thakkar's CI-Security interview was conducted on August 24, 2017 at Fort Devens, MA.

73.     The September 30, 2016 DOD memorandum barred MAVNI recruits from shipping to Basic Training until the completion of the SSBI investigations and the additional NIAC and CI-Security review.  MAVNI recruits who cannot attend Basic Training within 730 days of their enlistment date are subject to discharge without characterization, which would render them ineligible to continue to seek naturalization.

74.     Upon information and belief, although the September 30, 2016 DOD memorandum was neither directed or copied to DHS or USCIS, it was provided to DHS and USCIS via email. Two business days after the issuance of the memorandum, on October 4, 2016, USCIS headquarters Field Office Directorate ("FOD") transmitted the memorandum to its field offices, including the USCIS Boston Field Office.  On or about February 28, 2017, USCIS headquarters FOD advised its field offices and service centers to "hold" certain naturalization applications for MAVNI recruits.  That hold placed a moratorium on USCIS completing the adjudication of such

applications.  USCIS headquarters FOD then placed a written hold on or about April 13, 2017 on the affected naturalization applications until DOD background checks were completed.

75.     Although SSBI, NIAC and CI-Security investigations have nothing to do with eligibility for naturalization, the DOD Defendants have instructed the DHS Defendants to place Dr. Thakkar's naturalization application on hold pending the completion of such investigations.

76.     No U.S. law or regulation provides that such security clearance investigations are required or can be made a precondition for obtaining citizenship through naturalization.

77.     USCIS is required by federal law to complete background checks on all persons seeking to naturalize as United States citizens.  8 U.S.C. § 1446.  Such standard background checks include an FBI review of criminal history.  USCIS also conducts a Defense Clearance Investigative Index (DCII) query with DOD for any applicant with military service.  A DCII shows whether the applicant has any derogatory information in his or her military records.  No law allows USCIS to conduct background checks of naturalization applicants at the Top Secret Security Clearance level and beyond.

78.     Non-MAVNI naturalization applicants are not required to pass a Top Secret Security Clearance level investigation as a condition of naturalization.

79.     DOD Defendants have also insisted that Dr. Thakkar become a "stateless person" prior to allowing his naturalization to proceed.  The DOD Consolidated Adjudications Facility has sought to have Dr. Thakkar renounce his Indian citizenship.  While U.S. naturalization law requires

a successful applicant to take an Oath of Allegiance to the United States and agree to bear arms on

behalf of the country, there is no requirement to renounce the citizenship of one's native land

*before* being naturalized as a U.S. citizen.[3]

80.    The elevated DOD background investigations are not related to any particular

security concern related to Dr. Thakkar.  The elevated background investigations are part of a

recent change in DOD policy toward MAVNI program members who seek to obtain citizenship

through naturalization.

81.    DOD Defendants have continued to delay the completion of Dr. Thakkar's

background investigation, and have caused DHS Defendants to delay processing Dr. Thakkar's

naturalization application, Dr. Thakkar's service contract may be subject to termination as a result

of him being in the Delayed Training Program for more than 730 days.  Dr. Thakkar could receive

an uncharacterized discharge, which would disqualify him from naturalization, federal

employment, and wreck his intended career in the U.S. Army.

82.    If not for DOD Defendants' interference and the resulting hold on his naturalization

application, Dr. Thakkar would be a naturalized citizen of the United States.

83.    Dr. Thakkar is, was, and continues to be a person of good moral character

---

[3] Dr. Thakkar is a noncitizen who is present in the U.S. on a visa.  Were he to renounce his Indian citizenship he would no longer hold a valid Indian passport.  That would void his visa and render him an "unauthorized immigrant," since he must maintain a valid passport in order to maintain his visa status.

84. Dr. Thakkar is, was, and continues to be prepared to demonstrate his knowledge of the English language, U.S. history, and government.

85. Defendants' refusal to timely adjudicate Plaintiff's naturalization application has caused, and will continue to cause hardship and damage to Plaintiff.

86. Instead of drawing the pay and allowances of a Captain in the Army Reserve, Dr. Thakkar is drawing the pay and allowances of a Specialist Fourth Class.

87. Instead of working in his chosen field as a dentist, Dr. Thakkar is performing the duties of a Specialist Fourth Class. Dr. Thakkar's SSBI was completed more than one year ago. Dr. Thakkar's CI-Security interview was conducted on August 24, 2017, which was almost ten months ago. Despite these security checks having been completed, Dr. Thakkar has not been naturalized as a United States citizen and he has not been allowed to work in his chosen field for the United States Army.

88. Defendants have delayed Plaintiff's opportunity to live and work in the United States as a United States citizen.  Plaintiff has been deprived of his statutory right to naturalize solely because of the bureaucratic failings of Defendants.  Because of Defendants' failure to adjudicate his application for naturalization, Plaintiff is unable to travel freely as a U.S. Citizen, unable to vote in elections, serve on juries, and enjoy other rights and responsibilities of U.S. citizenship.  Because of Defendants' failure to adjudicate his application for naturalization, Plaintiff is at risk of removal from the United States.  Because of Defendants' failure to adjudicate

his application for naturalization, Plaintiff has had to expend money to protect himself and his rights.

## VII.   CAUSES OF ACTION
### COUNT ONE
### UNREASONABLE DELAY IN VIOLATION OF THE
### ADMINISTRATIVE PROCEDURE ACT

89.     The allegations contained in paragraphs 1 through 88 above are incorporated herein as if fully set forth at this point.

90.     The Administrative Procedure Act requires administrative agencies to conclude matters presented to them "within a reasonable time."  5 U.S.C. § 555.  A district court reviewing agency action may "compel agency action unlawfully withheld or unreasonable delayed." 5 U.S.C. § 706(1).  The court also may hold unlawful and set aside agency action that, inter alia, is found to be: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C); or "without observance of procedure required by law," 5 U.S.C. §706(2)(D).  "Agency action" includes, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C § 551(13).

91.     DHS Defendants are unlawfully withholding and unreasonably delaying action and are refusing to obey their governing rules and statutes regarding "wartime" military naturalizations in an arbitrary, capricious, unlawful and abusive manner, well in excess of all statutory authority or right.

92.     DOD Defendants are unlawfully intruding into the naturalization decisions of DHS Defendants causing them to withhold and unreasonably delay action and are arbitrary, capricious, unlawful and abusive, because they are acting well in excess of all statutory authority or right.

93.     As a result of Defendants' actions, Plaintiff has suffered and continues to suffer injury.  Declaratory and injunctive relief is therefore warranted.

## COUNT TWO
## WRIT OF MANDAMUS

94.     The allegations contained in paragraphs 1 through 93, above are incorporated herein as if fully set forth at this point.

95.     DHS Defendants have a ministerial duty to Plaintiff to adjudicate his naturalization application timely and to complete any other investigation required for his naturalization.  DHS Defendants have failed in that duty.

96.     Plaintiff has no adequate remedy at law for DHS Defendants' failure to adjudicate the naturalization application timely.

97.     DOD Defendants have the duty not to interfere in and hamper naturalization.

98.     The Court should grant relief in the form of a writ of mandamus compelling DHS Defendants to follow their own statutes, regulations, and policies with respect to Plaintiff's naturalization application.

99.     The Court should grant relief in the form of a writ of mandamus compelling DOD Defendants to cease all interference with Plaintiff's naturalization application.

## COUNT THREE
## CONSTITUTIONAL INJURY

100.    Plaintiff incorporates the allegations of Paragraphs 1 through 88, above, as if fully set forth at this point.

101.    Defendants' interference with, and failure to adjudicate and approve, Plaintiff's naturalization application denies Plaintiff Due Process (and the equal protection) of the Laws and

is thus violative of the United States Constitution, Amend. V.  Declaratory and injunctive relief is therefore warranted.

## COUNT FOUR
## STATUTORY RIGHT TO NATURALIZE

102.     Plaintiff incorporates the allegations of Paragraphs 1 through 88, above, as set forth at this point.

103.     Defendants' interference with, and failure to adjudicate, Plaintiff's naturalization is a violation of the Immigration & Nationality Act, the Administrative Procedures Act, and the Constitution.  Plaintiff, serving honorably in the United States Army in a time of conflict, has a clear right to apply for naturalization, DHS Defendants have the clear duty to lawfully adjudicate that application, and DOD Defendants have the clear duty not to interfere in the lawful adjudication of that application.

104.     Defendants are not doing their duty and there is no other relief available to Plaintiff other than this Court Ordering DHS Defendants to do their duty and adjudicate Plaintiff's N-400 application and Ordering DOD Defendants to cease their interference.  Declaratory and injunctive relief is therefore warranted.

## COUNT FIVE
## BREACH OF CONTRACT

105.     Plaintiff incorporates the allegations of Paragraphs 1 through 88, above, as set forth at this point.

106.     DOD Defendants' and DHS Defendants' actions are chargeable to Defendant USA.

107.     DOD Defendants' and DHS Defendants' actions have deprived Plaintiff of the benefit of his bargain with Defendant USA.

108.    Money damages are an insufficient remedy for Defendant USA's breach of the contract with Dr. Thakkar with regard to naturalization.

109.    Plaintiff has suffered monetary damages in the amount of the pay difference between a Specialist Fourth Class and an Army Captain, in an amount not to exceed $10,000.

110.    Plaintiff enlistment contract with Defendant USA should be specifically enforced, and Plaintiff's naturalization application adjudicated promptly and in accordance with law.

COUNT SIX
EQUITABLE ESTOPPEL

111.    Plaintiff incorporates the allegations of Paragraphs 1 through 88, above, as set forth at this point.

112.    DOD has made factual representations concerning enlistment and naturalization, authorized by law, to Plaintiff, upon which Plaintiff has reasonably relied.

113.    Contrary to the factual representations concerning enlistment and naturalization made to Plaintiff, DOD Defendants have unlawfully and improperly instructed DHS Defendants to suspend the processing of Plaintiff's properly filed naturalization application.

114.    Having secured Plaintiff's reasonable reliance on the factual representations concerning enlistment and naturalization, DOD Defendants are equitably estopped from instructing DHS Defendants to withhold adjudication of Plaintiff's properly filed naturalization application.

COUNT SEVEN
DECLARATORY JUDGMENT

115.    Plaintiff incorporates the allegations of Paragraphs 1 through 88, above, as set forth at this point.

116.    A Court is authorized in a case of actual controversy within its jurisdiction to declare the rights and other legal relations of any interested party seeking such declaration.  28 U.S.C. § 2201.

117.    DOD Defendants unlawfully and improperly have instructed DHS Defendants to suspend the processing of Plaintiff's properly filed naturalization application.  The lawful role of DOD Defendants in the naturalization process is simply to verify the honorable service of the naturalization applicant.  8 U.S.C. § 1440.  While they may do so for DOD purposes, DOD Defendants' lawful role in the naturalization process does not include the Top Secret background investigations and CI-Security Review, and DOD Defendants have no lawful authority to instruct the DHS Defendants to cease processing of Plaintiff's properly filed naturalization application pending the Top Secret background investigations and CI-Security Review.

118.    Plaintiff requests that this Court issue a declaratory judgment finding that: 1) the role of DOD Defendants in naturalization matters under 8 U.S.C. § 1440 is limited to executing USCIS Form N-426 to verify the honorable service of a service member; 2) that DOD background checks, including SSBI/Tier 3 or 5, National Intelligence Agency Check ("NIAC") and Counterintelligence Security (CI-Security) review are not required for naturalization under 8 U.S.C. § 1440; and 3) DHS Defendants may not suspend, withhold, or delay processing of Plaintiff's properly filed naturalization application based on DOD Defendants' instructions.

COUNT EIGHT
PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

119.    Plaintiff incorporates the allegations of Paragraphs 1 through 88, above, as set forth at this point.

120.     DOD Defendants have, unlawfully and improperly, instructed DHS Defendants to suspend the processing of Plaintiff's properly filed naturalization application.  The lawful role of DOD Defendants in the naturalization process is simply to verify the honorable service of a service member.  8 U.S.C. § 1440.

121.     DHS Defendants have acquiesced to DOD Defendants' instructions and have suspended, withheld, and delayed the process of Plaintiff's properly filed naturalization application, in violation of their obligations under federal law.

122.     Plaintiff has been and continues to be substantially and irreparably harmed by Defendant's improper and unlawful conduct.  There is no adequate remedy at law, the balance of the equities in the case favor Plaintiff, and injunctive relief is in the public interest.

123.     Plaintiff requests that this Court issue a preliminary and permanent injunction against DHS Defendants to compel DHS Defendants to comply with the obligations of 8 U.S.C. § 1440 to immediately process Plaintiff's properly filed naturalization application and to expedite such processing in order to avoid additional harm to Plaintiff resulting from the unlawful suspension of the processing of Plaintiff's application.

124.     Plaintiff also requests that this Court issue a preliminary and permanent injunction against DOD Defendants to enjoin them from instructing DHS Defendants to withhold, suspend, or delay the processing of Plaintiff's properly filed naturalization application or otherwise interfere with the adjudication of Plaintiff's naturalization application.

125.     Plaintiff also requests preliminary and permanent injunctive relief against Defendants enjoining them from engaging in any retaliatory actions against Plaintiff.

## VIII.   PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for relief as follows:

A.      For this Court to Order DHS Defendants by way of Mandamus to adjudicate Plaintiff's naturalization application on or before thirty (30) days from the filing of this Complaint, or within such reasonable period time as is determined by this Court;

B.      For this Court to Order DOD Defendants by way of Injunction and Mandamus to immediately cease and desist from all actions delaying adjudication of Plaintiff's naturalization application and to take immediate, specific, and affirmative action to rescind all prior actions causing or requesting such delay in the adjudication of Plaintiff's naturalization application.

C.      For this Court to issue a Declaratory Judgment as requested forth in Count Seven, to the effect that: 1) DOD Defendants have no statutory right to impose additional requirements on naturalization and that all such action is unlawful and void; and 2) DHS Defendants have no statutory right to increase the statutory requirements for naturalization and that all such action is unlawful and void.

D.      For this Court to issue a Declaratory Judgment that Defendants have violated Plaintiff's rights to Due Process of Law, including the right to the equal protection thereof.

E.      For this Court to award damages in an amount not to exceed $10,000.

F.      For this Court to Order specific performance of Plaintiff's enlistment contract, to include prompt, fair and lawful adjudication of his naturalization application, and, if successful, naturalization and commissioning as a Captain in the United States Army Reserve.

G.      For this Court to Order that Defendants are Equitably Estopped from delaying the processing of Plaintiff's naturalization application;

H.      For this Court to grant preliminary and permanent injunctions against Defendants as requested in Count Eight.

I.      For this Court to retain jurisdiction of this action during the adjudication of Plaintiff's naturalization application in order to ensure compliance with this Court's Orders;

J.      For this Court to award Plaintiff reasonable costs and attorneys' fees pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412; and

K.      For this Court to Order all such other relief in Law or Equity as the Court deems just and proper.

Respectfully submitted this 25th day of June 2018.


*s/ Laura Murray-Tjan*
Laura Murray-Tjan, Esq. (BBO#649609)
Federal Immigration Appeals Project
6 Beacon Street, Suite 900
Boston, MA 02108


*s/Margaret D. Stock*
Margaret D. Stock, Esq. (AK Bar #9306036)
Cascadia Cross Border Law Group, LLC
4141 B Street, Suite 205
Anchorage, AK 99503
*[Pro Hac Vice Application Pending]*

## INDEX OF EXHIBITS

| Exhibit | Description |
| --- | --- |
| 1 | N-400, Application for Naturalization Receipt Notice with receipt number LIN*001401955, dated 09/21/2016 |
| 2 | DHS-7001, Request to CIS Ombudsman Confirmation for Case 201706381, dated July 18, 2017 |