# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

DR. VICKY INDRAVADAN THAKKAR,
Plaintiff,

      v.                                          CIVIL ACTION NO. 18-cv-11323-MPK[1]

UNITED STATES OF AMERICA,
U.S. DEPARTMENT OF HOMELAND SECURITY,
KIRSTJEN NIELSEN,
U.S. CITIZENSHIP & IMMIGRATION SERVICES,
L. FRANCIS CISSNA,
DISTRICT DIRECTOR DENIS RIORDAN,
FIELD OFFICER DIR. MIKE MCCLEARY,
U.S. DEPARTMENT OF DEFENSE,
SECRETARY JAMES M. MATTIS,
UNDERSECRETARY ROBERT WILKIE,
Defendants.

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY THE CASE
## (#14.)

KELLEY, U.S.M.J

## I. Introduction

In this case, a non-citizen without permanent residency, who enlisted in the United States Army and applied for United States citizenship, alleges that the Department of Defense (the DOD), the Department of Homeland Security (the DHS), and certain of their sub-agencies and agency heads breached his enlistment contract and violated various statutes and constitutional provisions by stalling the processing of his citizenship application.

---

[1] With the parties' consent, this case has been assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 29 U.S.C. § 636(c). (#18.)

On June 25, 2018, Plaintiff, Dr. Vicky Indravadan Thakkar, a citizen of India, filed an eight-count complaint against the United States, the DHS, the DOD, the United States Citizenship and Immigration Services (USCIS), their respective agency heads, and various Boston-area field officers, alleging the following claims: unreasonable delay in processing his naturalization application in violation of the Administrative Procedure Act (APA**)**, 5 U.S.C. §§ 551 *et seq.* (Count I) (#1 ¶¶ 89–93);Writ of Mandamus (Count II) (*id.* at ¶¶ 94–99); violation of his rights under the Fifth Amendment (Count III) (*id.* at ¶¶ 100–01); deprivation of the "Statutory Right To Naturalize[,]" pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1440 and the APA (Count IV) (*id.* at ¶¶ 102–04); breach of contract (Count V) (*id.* at ¶¶ 105–10); equitable estoppel (Count VI) (*id.* at ¶¶ 111–14); declaratory judgment (Count VII) (*id.* at ¶¶ 115–18); and preliminary and permanent injunctive relief (Count VIII) (*id.* at ¶¶ 119–25.)

Plaintiff alleges that, in addition to violating certain statutes and constitutional provisions, the DOD's refusal to complete a background investigation, and the DHS and its sub-agencies' resultant delay in processing his naturalization application, have damaged his career prospects in the United States Army and denied him citizenship. (*Id.* at ¶¶ 81, 85–86, 88.) Plaintiff also alleges that the DOD unreasonably has insisted that he revoke his Indian citizenship and become a "stateless person" before his naturalization application can proceed, rendering him an unauthorized immigrant and possibly subjecting him to deportation proceedings. (*Id.* ¶ 79 n.3.) Plaintiff seeks injunctive relief, requesting that the DOD complete his required background investigation and the DHS process his naturalization application, and seeking "specific enforcement" of his enlistment contract. (*Id.* ¶¶ 25–27.) Plaintiff also seeks monetary damages for "the past and ongoing breach of his enlistment contract[,]" as well as attorneys' fees and costs. (*Id.* ¶¶ 28–29.)

On September 7, 2018, Defendants filed a Motion to Dismiss or, In the Alternative, Stay the Case (#14), asserting that Plaintiff's suit is barred because he is already a member of a previously-filed class action, *Nio v. U.S. Dep't of Homeland Sec.*, No. 17-cv-0998 (ESH) (D.D.C. filed May 24, 2017). Defendants argue that, in addition to being barred by *Nio*, Plaintiff's claims for breach of contract, estoppel, and violation of the "statutory right to naturalize" should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6).

For the reasons stated below, the Court grants in part and denies in part Defendants' motion to dismiss the case without prejudice, and grants in part and denies in part a stay of the case pending the resolution of *Nio*.

## II. The Facts

The facts are undisputed except as indicated. Plaintiff is a citizen of India, and currently resides in Medford, Massachusetts. (#1 ¶ 1.) On August 17, 2010, Plaintiff lawfully entered the United States after being admitted on an "F-1" student visa. (*Id.* ¶ 46.) He graduated from Columbia University College of Dental Medicine in 2014 as a Doctor of Dental Surgery (DDS), after which he applied for and received H1B "non-immigrant" worker status, allowing him to remain lawfully within the United States. (*Id.* ¶¶ 47–49.) Plaintiff's first H1B was issued on May 14, 2015, and his current H1B was issued on November 22, 2016. (*Id.* ¶ 50.)

On November 12, 2015, Plaintiff signed an enlistment contract and took an oath of service with the United States Army through the Military Accessions Vital to National Interest (MAVNI) program.[2] (*Id.* ¶¶ 53, 57.) In his November 12, 2015 enlistment contract, Plaintiff agreed to apply

---

[2] In 2008, the DOD authorized the creation of the MAVNI program, which was designed to attract non-citizens without legal permanent residency, who were either health care professionals or had critical foreign language skills, to the armed forces. (#15-A-1 ¶ 4.) Renewal of the program was dependent on periodic reviews and reauthorization by the DOD and its sub-agencies. (*Id.*) While

for citizenship "as soon as" the Army had certified his honorable service. (#1 ¶ 55; #20-1 at 5 ¶ 5.) However, in signing the contract, Plaintiff acknowledged his understanding that "the Army does not grant U.S. citizenship," and the Army would not be able to guarantee that his application for citizenship would be approved. (#1 ¶ 55; #20-1 at 5 ¶ 5.) Approximately ten months later, in September 2016, Plaintiff began serving as a Specialist (E-4) in the Selected Reserve of the Ready Reserve (Selected Reserve).[3] (#1 ¶ 58.)

Generally, only United States citizens or those having legal permanent residency may enlist in the United States Armed Forces. (#1 ¶ 35; #15-A-1 ¶ 3 (citing 10 U.S.C. § 504(b)).) Under the MAVNI program, however, non-citizens like Plaintiff without permanent residency could enlist and serve in the military if they had critical skills "vital to the national interest[.]" (#15-A-1 ¶¶ 3–4 (citing 10 U.S.C. § 504(b)(2), and 8 U.S.C. § 1440).) Those enlisting under the MAVNI program would be afforded an expedited path to citizenship. (*Id.* ¶ 9.)[4] As part of the enlistment process, a

---

the MAVNI program was renewed through September 30, 2017, (#15-A-2 at 1), the record does not indicate that it has since been renewed beyond that date.

[3] Plaintiff continues to serve honorably today. (#1 ¶ 58.) He cannot be promoted from an E-4 until he is naturalized as a citizen. (*Id.*)

[4] Specifically,

> [p]ursuant to 8 U.S.C. § 1440 . . . a person who is not a Legal Permanent Resident ("LPR") who enlists in the armed forces "during any . . . period which the President by Executive order shall designate as a period in which the Armed Forces . . . are or were engaged in military operations with a hostile foreign force" may apply to be naturalized as a citizen "whether or not he has been lawfully admitted to the United States for permanent residence" without regard to age, period of residence in the United States or length of military service.

(#15-A-1 ¶ 3) (quoting 8 U.S.C. § 1440).) On July 3, 2002, President George W. Bush stated in an executive order that the military was engaged in such conflict pursuant to 8 U.S.C. § 1440. (*Id.* (citing Exec. Order No. 13269, 67 Fed. Reg. 45,287 (Jul. 3, 2002)).) This executive order remains in effect. (*Id.*) Ordinarily, a non-citizen wishing to become a citizen must have at least five years of legal permanent residency in the United States in order to apply. (*Id.* § 9 n.2.)

MAVNI applicant would undergo a "military-service determination" and other military background checks. (#1 ¶ 70.) The MAVNI applicant could begin the process of applying for naturalization as soon as the armed services certified his or her honorable service, by submitting to USCIS a standard Form N-400 naturalization application, as well as a USCIS Form N-426, certifying his qualifying military service. (#15-A-6 ¶ 5; *see also* #1 ¶ 59.) Serving in the Selected Reserve was considered "qualifying military service." (#15-A-6 ¶ 44) (citation omitted).)

Until recently, it was USCIS' general practice to process MAVNI naturalization applications in the same way as other § 1440 naturalization applications, by initiating an FBI criminal background check and conducing a Defense Clearance Investigative Index (DCII), (separate from the required military background checks), with the DOD. (#1 ¶¶ 70, 77 (citing 8 U.S.C. § 1446); #15-A-6 ¶ 65.) Once the FBI criminal background and DCII checks had been completed, a MAVNI naturalization applicant was eligible for an examination by a USCIS officer. *See Nio v. Dept' of Homeland Sec.*, 270 F. Supp. 3d 49, 55 (D.D.C. 2017) (citing 8 C.F.R. 335.2 (2011)). Although there was no specific time period for completing the FBI criminal background checks and DCII checks, USCIS was required by statute to adjudicate all naturalization applications within 120 days of completing the examination. *Id.* at 67 (citing *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 50 (D.D.C. 2008)). As of May 2017, the average processing time for all military N-400 naturalization applications, including those of the MAVNI applicants, was slightly more than four months. *Id.* at 56. Also, as of July 2017, USCIS had naturalized "at least" 10,000 MAVNI applicants through this process. (#15-A-1 ¶ 7.)

Plaintiff submitted his N-400 Naturalization Application pursuant to USCIS' general practice in September 2016. (#1 ¶ 59.) On September 11, 2016, Plaintiff's Company Commander,

Lieutenant Colonel Edwardo Olegario, signed Form N-426, certifying Plaintiff's honorable military service. (*Id.*) On November 4, 2017, Plaintiff submitted an additional N-426 Form, this time signed by Colonel John McCabe. (*Id.* n.2.) All parties agree that Plaintiff's N-400 and N-426 forms were received and submitted in the proper form. (*Id.* ¶ 60.)

Plaintiff's naturalization application has since been in limbo. Beginning on September 30, 2016, the DOD started requiring all MAVNI applicants to complete an enhanced military security screening before they could receive a favorable military service determination, qualify for active-duty status, or ship to basic training. (#15-A-2; #15-A-4 at 1.) While this enhanced military security screening requirement for MAVNI applicants did not necessarily impact the adjudication of the MAVNI naturalization applications on its face, in April 2017, the DOD informed USCIS of its concerns regarding the naturalization of MAVNI applicants whose enhanced military screenings were still pending. (#15-A-1 ¶ 18.) Thereafter, on July 7, 2017, Daniel Renaud, then the Associate Director, Field Operations Directorate, of USCIS Headquarters, provided final agency guidance, stating that all pending and future MAVNI naturalization applications "may not proceed to interview, approval, or oath until confirmation that all enhanced security checks [were] completed." (#15-A-5 at 1–2.) Accordingly, USCIS would no longer be permitted to examine any pending MAVNI naturalization applications until the DOD completed its enhanced military security screenings. (*Id.*) Neither the DOD nor USCIS has provided any guidance regarding how long these enhanced security screenings will take.

On October 17, 2016, USCIS initiated Plaintiff's background check for naturalization. (#1 ¶ 61.) While a USCIS field officer has informed Plaintiff that his FBI criminal background check has been complete since January 2017, USCIS has repeatedly advised him that his enhanced military security screening is incomplete and has failed to provide any estimated time for

completion. (*Id.* ¶¶ 67–68.) On March 19, 2018, Plaintiff was again informed that "his case was on hold due to pending background checks." (*Id.* ¶ 68.) Therefore, as of the time his complaint was filed, USCIS had not scheduled Plaintiff's naturalization interview. (*Id.* ¶ 63.)

On May 24, 2017, before the instant suit was filed, various foreign national soldiers who, like Plaintiff, had enlisted in the Selected Reserve through the MAVNI program and filed naturalization applications pursuant to 8 U.S.C. § 1440, filed suit in the United States District Court for the District of Columbia (District of Columbia) against the DHS, the DOD, and USCIS, and their agency and sub-agency heads. *See Nio*, No. 17-cv-0998 (ESH). Following USCIS' July 7, 2017 guidance, the *Nio* plaintiffs amended their complaint, specifically challenging the DHS/USCIS' decision to put their naturalization applications on hold pending the DOD's completion of enhanced military security screenings. (#15-A-6.) Like Plaintiff in the present case, the *Nio* plaintiffs brought multiple claims under the Constitution and the APA, seeking mandamus, due process, declaratory relief, and injunctive relief "to compel and enjoin Defendants . . . to properly and timely act upon, and to otherwise cease interfering with, the processing of [p]laintiffs' naturalization applications." (*Id.* ¶ 10.)

On October 27, 2017, the District of Columbia granted the *Nio* plaintiffs' motion for class certification, defining the *Nio* class to include individuals who have:

(i)     enlisted in the Selected Reserve through the MAVNI program before October 13, 2017;

(ii)    served honorably in the United States military through participation in at least one Selected Reserve drill period or in an active duty status;

(iii)   received from the military executed Form N-426s certifying their honorable service;

(iv)     submitted N-400 Applications for Naturalization to USCIS; and

(v)      had the processing or final adjudication of their naturalization applications withheld or delayed, due to either the DOD's enhanced military security screenings, a final USCIS processing hold for MAVNIs, a DOD N-426 policy review, the DOD N-426 recall/decertification policy, a DOD Consolidated Actions adjudication, a national security determination, and/or a military service suitability vetting or determination.

(#15-A-7 at 1–2); *Nio v. Dept' of Homeland Sec.*, 323 F.R.D. 28, 31 (D.D.C. 2017). While the *Nio* court acknowledged the factual differences among the class members, it noted that the plaintiffs were all challenging whether USCIS could delay their naturalization applications pending the outcome of the DOD's enhanced military security screenings, or whether the DOD could rescind MAVNIs' N-426s based on additional "October 13th Guidance."[5] (#15-A-7 at 8); *Nio*, 323 F.R.D. at 32. Put differently, because the parties were challenging "the application of standardized policies that generally apply to the class[,]" none of the class members' factual differences impacted "the overarching questions common to the class[.]" (#15-A-7 at 8, 13); *Nio*, 323 F.R.D. at 32, 34–35.

---

[5] This guidance provided for the recall and decertification of the N-426 Forms of all MAVNI enlistees who had completed their naturalization applications, but whose enhanced security screenings had not been completed. *Nio v. Dept' of Homeland Sec.*, 323 F.R.D. 28, 31 (D.D.C. 2017). In October 2017, the *Nio* court issued a preliminary injunction that enjoined the DOD from decertifying the N-426 Forms of any class members, "except as related to the conduct of a class member and based on sufficient grounds generally applicable to members of the military for re-characterization of service." (#26 at 3–4 (citation omitted)); *see also Nio*, 323 F.R.D. at 31. Plaintiff does not reference this guidance in his complaint, and it is not otherwise relevant to the Court's decision.

The *Nio* class is a nationwide class certified under Federal Rules of Civil Procedure 23(a), (b)(1)(A), and (b)(2).[6] (#15-A-7 at 7–13); *Nio*, 323 F.R.D. at 32–35. According to Defendants, Plaintiff has been listed as a class member in the periodic updates ordered by the court in *Nio*. (#15 at 1–2; *see also* #15-A-8.)

Defendants argue that, because Plaintiff is a member of the *Nio* class, and his complaint seeks to litigate the same claims covered in *Nio*, his complaint in this Court should be dismissed, or alternatively, stayed, pending the District of Columbia's resolution of *Nio*. (#15 at 1–2.) Defendants also contend that, in addition to being barred by *Nio*, Plaintiff's claims for estoppel, breach of contract, and violation of the "statutory right to naturalize" should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6). (*Id.* at 11–16.)

Without explaining how this affects the relief he is seeking, Plaintiff responds by arguing that he is not sufficiently similar to the other MAVNI enlistees in the *Nio* class because he is a "medical" MAVNI, and the *Nio* lawsuit "appears" to involve "language" MAVNIs, who are subject to different enhanced military security screenings than he is. (#20 at 4.) Plaintiff further argues that his statutory right to naturalize, breach of contract, and equitable estoppel claims are

---

[6] Federal Rule of Civil Procedure 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if" the following four criteria are met: (1) the proposed class is so large that "joinder of all members is impracticable"; (2) common questions of law or fact exist; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Rule 23(b)(1)(A) provides that a class action may proceed if Rule 23(a) is satisfied, and the litigation of separate actions by or against individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class[.]" Fed. R. Civ. P. 23(b)(1)(A). Rule 23(b)(2) provides that a class action may proceed if Rule 23(a) is satisfied, and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2).

different from the claims of the class action members in *Nio*. (#20 at 12–13.) Plaintiff also contends that equity mandates denying Defendants' motion because *Nio* is "proceeding at a snail's pace[,]" and there is no prospect of any "practical relief" any time soon. (#20 at 12.)

III. Standards of Review

A. Motion to Dismiss or, In the Alternative, Stay Proceedings Due to *Nio*

The First Circuit has noted that "[o]bvious concerns" arise where, as here, actions involving similar parties and similar subject matter are pending in different federal district courts, including "wasted resources because of piecemeal litigation, the possibility of conflicting judgments, and a general concern that the courts may unduly interfere with each other's affairs." *TPM Holdings v. Intra-Gold Indus.*, 91 F.3d 1, 4 (1st Cir. 1996). Under what has become known as the first-to-file rule, where the overlap between two suits is "nearly complete[,]" the usual practice is for the court where the case was first filed to resolve the issues, and the other court to defer by either staying, transferring, or dismissing the action. *Id.* (citing *West Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985)); *see also In re Telebrands Corp.*, 824 F.3d 982, 984 (Fed. Cir. 2016) (first-to-file "rule stands for the common sense proposition that, when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases").

The first-to-file rule is not to be applied in a "mechanical way." *ECM Corp. v. Parallel Iron, LLC*, 914 F. Supp. 2d 125, 127 (D. Mass. 2012) (citing *Kerotest Mfg. Co. v. C-O Two Fire Equip. Co.*, 198 F.2d 31, 34–35 (3d Cir. 1951)). "Exceptions to the rule are not rare," *id.* (citing *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 517 F.3d 897, 904 (Fed. Cir. 2008)), and courts have "discretion to give preference to a later-filed action when the action will better serve the interests involved." *Id.* (citing *A123 Sys. v. Hydro-Quebec*, 657 F. Supp. 2d 276, 279 (D. Mass. 2009)).

"'[F]airness considerations and equitable concerns could bar the application of the rule,' as can 'demonstrations of prejudice.'" *Qi Wang v. Valeika*, No. 18-cv-02666-EMC, 2018 U.S. Dist. LEXIS 157405, at *13 (N.D. Cal. Sept. 14, 2008) (quoting *Adoma v. Univ. of Phx., Inc.*, 711 F. Supp. 2d 1142, 1149 (E.D. Cal. 2010)). In addition to determining which suit was filed first, courts will examine the similarity of the parties involved and the similarity of the issues in deciding whether the first-to-file rule should apply. *ECM*, 914 F. Supp. 2d at 127.

Courts have "broad discretion to stay cases, provided that the length of stay is reasonable and accounts for the competing interests of the parties." *Klein v. MHM Corr. Servs.*, No. 08-11814-MLW, 2010 U.S. Dist. LEXIS 83818, at *27 (D. Mass. Aug. 16, 2010) (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). This discretion is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The party moving for the stay bears the burden of proving that a stay is appropriate. *See id.* at 255.

With respect to motions for stays involving related class actions, the Supreme Court has "established that, as a question of power," courts may stay a suit "pending resolution of another which, 'even if it should not dispose of all the questions involved, would certainly narrow the issues in the pending cas[e] and assist in the determination of the questions of law involved.'" *Taunton Gardens Co. v. Hills*, 557 F.2d 877, 879 (1st Cir. 1977) (quoting *Landis*, 299 U.S. at 253–54). "While there is a heavy burden on the party requesting a stay to justify requiring 'a litigant in one cause . . . to stand aside while a litigant in another settles the rule of law that will define the rights of both,'" the Supreme Court has instructed courts to consider the public interest, the court's interest in efficiency, and the "interest of justice" in determining whether a stay is appropriate. *Id.* (quoting *Landis*, 299 U.S. at 255).

Federal courts have cautioned against dismissing a case outright due to the pendency of a related case, given the prejudice that may result. *See, e.g.*, *Ritchie Capital Mgmt., LLC v. BMO Harris Bank, NA*, 868 F.3d 661, 666 (8th Cir. 2017) (citing *Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 797–98 (8th Cir. 2008)) (expressing preference for stays over dismissals "to preserve any claims that might not be resolved by the parallel proceedings"); *Alltrade, Inc. v. Uniweld Prods.*, 946 F.2d 622, 628–29 (9th Cir. 1991).

B. <u>Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)</u>

A defendant may move to dismiss an action based on lack of federal subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction." *Fabrica de Muebles J.J. Alvarez, Incorporado v. Inversiones Mendoza, Inc.*, 682 F.3d 26, 32 (1st Cir. 2012) (citing *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir. 1998)).

In ruling on a motion to dismiss for lack of jurisdiction, the court must "credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Sanchez ex rel. D.R.-S. v. U.S.*, 671 F.3d 86, 92 (1st Cir. 2012) (quoting *Merlonghi v. U.S.*, 620 F.3d 50, 54 (1st Cir. 2010)). The "court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" *Merlonghi*, 620 F.3d at 54 (quoting *Aversa v. U.S.*, 99 F.3d 1200, 1210 (1st Cir. 1996)); *Carroll v. U.S.*, 661 F.3d 87, 94 (1st Cir. 2011). That being said, a plaintiff cannot assert a proper jurisdictional basis "merely on 'unsupported conclusions or interpretations of law.'" *Murphy v. U.S.*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Wash. Legal Found. v. Mass. Bar Found.*, 993 F.2d 962, 971 (1st Cir. 1993)), *cert. denied*, 515 U.S. 1144 (1995).

C. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

A defendant may move to dismiss an action based on the plaintiff's failure to state a claim. Fed. R. Civ. P. 12(b)(6). In deciding such a motion, a court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Id.* at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 555 (internal quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible[.]" *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

IV. Discussion

A.  Motion to Dismiss or Stay the Proceedings Due to *Nio*

Although Plaintiff's claims are not precisely the same as the claims in *Nio*, Defendants argue that Plaintiff's complaint should be either dismissed or stayed, pending the District of Columbia's resolution of *Nio*, pursuant to the first-to-file rule. (#15 at 1–2.)

It is undisputed that *Nio* was the first-filed action. Turning to the other two factors, the similarity of the parties and the similarity of the issues, other federal district courts have noted that "[t]he first-to-file rule 'does not require strict identity of the parties, but rather substantial similarity.'" *Wang*, 2018 U.S. Dist. LEXIS 157405, at *14 (quoting *Adoma*, 711 F. Supp. 2d at 1147). Therefore, when a suit is related to a class action like *Nio*, "the classes, and not the class representatives, are compared." *Id.* (quoting *Ross v. U.S. Bank Nat'l Ass'n*, 542 F. Supp. 2d 1014, 1020 (N.D. Cal. 2008)). Thus, courts will compare the allegations in the plaintiff's complaint with the class definition to determine whether the plaintiff meets the class definition's requirements. *See id.* If so, the parties will be sufficiently similar under the first-to-file rule. *See id.* at **14–16.

Applying these principles, the Northern District of California concluded in *Wang* that the *Nio* class definition applied to the plaintiff, Qi Wang, a Chinese citizen who was part of the MAVNI program and made claims similar to those of Plaintiff here. *Id.* at **6–8, 21. Like members of the *Nio* class, and Plaintiff in the present case, Wang alleged that although he had enlisted in the Selected Reserve through MAVNI before October 13, 2017, served honorably by participating in at least one Selected Reserve drill period, received an N-426 certifying his honorable service, and submitted a Form N-400 naturalization application to USCIS, the processing of his naturalization application had stalled. *Id.* at **14–16; *see also Gampala v. Dep't of Homeland Sec.*, No. 18-cv-02303-JSC, 2018 U.S. Dist. LEXIS 168328, at *10 (N.D. Cal. Sept.

28, 2018) (plaintiff part of the *Nio* class, as both plaintiff and the *Nio* class members were experiencing a delay in the adjudication of their naturalization applications due to the enhanced DOD military security screenings).

Parties may be sufficiently similar even "where only one of several defendants in the second filed action is the same as the first filed action[.]" *McGlynn v. The Credit Store, Inc.*, 234 B.R. 576, 580 (D.R.I. 1998); *see also Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015) (citations omitted) ("the first-to-file rule does not require exact identity of the parties"); *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 n.6 (E.D. Cal. 2011) (citations omitted) (holding that first-to-file rule can still be "satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional unmatched parties in one of both matters"); *Gampala*, 2018 U.S. Dist. LEXIS 168328, at **10–11 (different defendants in each case did not alter character of either case because USCIS would be compelled to adjudicate the pending naturalization applications in the event that plaintiffs in either case prevailed).

The parties in the present case are sufficiently similar to the parties in *Nio* such that the first-to-file rule applies. Plaintiff, like many of the other class members in *Nio*, along with the plaintiffs in both *Wang* and *Gampala*, enlisted in the Selected Reserve through MAVNI before October 13, 2017; served honorably in the U.S. military by participating in at least one Selected Reserve drill period; received an executed Form N-426 certifying his honorable service; submitted an N-400 Application for Naturalization to USCIS; and finally, is having the processing or final adjudication of his naturalization application delayed or denied due to the DOD's enhanced security screenings. (#1 ¶¶ 22, 53, 57–69.) The DHS, USCIS, the DOD, and their officials are named Defendants in both cases. While various other field officers are also named as Defendants

here but not in *Nio*, their presence as Defendants does not affect the character of the present suit. As the Northern District of California explained in *Gampala*, USCIS would be compelled to adjudicate Plaintiff's naturalization application, regardless of whether he prevailed as a single plaintiff in the present case or as a class member in *Nio*.

Likewise, it suffices if the issues in two cases are "substantially similar[.]" *Dunkin Donuts Franchised Rests. LLC v. Wometco Donas Inc.*, 53 F. Supp. 3d 221, 233 (D. Mass. 2014) (citing *Wiley v. Gerber Prods. Co.*, 667 F. Supp. 2d 171, 173 n.1 (D. Mass. 2009)). In order to determine if issues are substantially similar, courts compare the relief sought in plaintiff's complaint and the relief sought in the class action. *Pride v. Correa*, 719 F.3d 1130, 1134 (9th Cir. 2013). Courts also examine whether the plaintiff's case and the class action turn on similar determinations of fact and seek to resolve similar legal issues. *Wang*, 2018 U.S. Dist. LEXIS 157405, at **17–18 (citing *Cadenasso v. Metro Life Ins. Co.*, No. 13-cv-05491-JST, 2014 U.S. Dist. LEXIS 52740, at *10 (N.D. Cal. Apr. 15, 2014)).

Like the *Nio* class action members, Wang brought claims under the APA and sought to obtain mandamus, an order equitably estopping the defendants from withholding his naturalization application, and "declaratory, preliminary and permanent injunctive relief to compel and enjoin defendants to comply with their statutory obligations[.]" *Id.* at **16–17. Holding that the issues raised in Wang's complaint were sufficiently similar to the issues raised in *Nio,* the Northern District of California reasoned that both Wang and the *Nio* class members had the ultimate end goal, namely, the timely processing of their naturalization applications, and both cases turned on whether the DHS, the DOD, and various agency heads and field officers violated their statutory obligations by imposing additional requirements and holds on their naturalization applications. *Id.* at **17–19; *see also Hu v. U.S. Dep't of Homeland Sec.*, No. 4:17-cv-02363-AGF, 2018 U.S. Dist.

LEXIS 39856, at *12 (E.D. Mo. Mar. 12, 2018) (some factual variations among MAVNI class members would not impact "overarching questions" common to the entire class, which were whether the defendants had any authority to implement the stricter background screenings and halt naturalization applications).

Plaintiff and the class members in *Nio* seek the same relief, and both cases turn on similar determinations of fact and attempt to resolve similar legal issues. Plaintiff does not allege the same exact claims as the *Nio* class members. He alleges various additional claims, including violation of the "statutory right to naturalize," breach of contract, and equitable estoppel. At base, however, Plaintiff, like the *Nio* class members and the plaintiffs in *Wang*, *Gampala*, and *Hu*, challenges whether the DOD can implement stricter military security screenings and whether USCIS can hold naturalization applications pending the outcome of those enhanced security screenings. *See Wang*, 2018 U.S. Dist. LEXIS 157405, at **18–19 (although the exact claims differed, "the operative facts, alleged statutory violations, and key legal questions underlying the claims relating to the MAVNI naturalization process in this case and *Nio* are essentially the same, and thus the two suits substantially overlap"); *Gampala*, 2018 U.S. Dist. LEXIS 168328, at *13 (the "core" of the plaintiff's requested relief was the same as the *Nio* class). *Contra McGlynn*, 234 B.R. at 581 (declining to apply the first-to-file rule and denying defendants' motion to transfer or stay the action when the issues presented in the first case were not necessarily dispositive of those in the other).

While Plaintiff maintains he is not sufficiently similar to the MAVNI enlistees in *Nio* because he is a medical MAVNI, and the *Nio* lawsuit appears to involve language MAVNIs, who are subject to different background checks than he is, (#20 at 4), Defendants accurately point out that "the parties in *Nio* explicitly agreed that the *Nio* class included 'DTP *medical and language*

Selected Reserve MAVNI soldiers.'" (#26 at 2) (emphasis added) (quoting Reply to Opposition to Defendants' Motion to Dismiss or Stay at 2, *Nio*, No. 17-cv-0998 (ESH).) More importantly, Plaintiff fails to explain how his classification as a medical MAVNI in any way affects the relief that he is seeking, the determinations of fact required in his case, or the legal issues his case seeks to resolve. Accordingly, the issues both cases raise are "substantially similar" such that the first-to-file rule applies.

The Court concludes that staying Plaintiff's claims for mandamus (Count I); violations of the APA (Count II); constitutional injury pursuant to the Fifth Amendment (Count III); deprivation of the statutory right to naturalize (Count IV); equitable estoppel (Count VI); declaratory relief (Count VII); and preliminary and permanent injunctive relief (Count VIII) is the appropriate remedy. Staying these claims is consistent with Northern District of California's decisions in *Wang*, 2018 U.S. Dist. LEXIS 157405, *Gampala*, 2018 U.S. Dist. LEXIS 168328, and *Hu*, 2018 U.S. Dist. LEXIS 39856, at **6–7, 12 (denying the defendants' motion to dismiss, but staying the case pending resolution of *Nio*, when the plaintiff/MAVNI recruit alleged that defendants violated the APA by unlawfully withholding the completion of his naturalization application in violation of his procedural due process rights).

Because both the present case and *Nio* will turn on similar determinations of fact in deciding whether Defendants violated any statutory or constitutional obligations by imposing additional requirements and putting holds on the plaintiffs' naturalization applications, staying these claims will also alleviate the First Circuit's concerns of "wasted resources" and "the possibility of conflicting judgments[.]" *See TPM*, 91 F.3d at 4. Plaintiff fails to demonstrate any prejudice staying these claims would cause. Contrary to Plaintiff's assertion that *Nio* is "proceeding at a snail's pace[,]" without any "practical relief" in sight (#20 at 12), the *Nio* parties

have filed cross motions for summary judgment, on which briefing is believed to have concluded in early 2019. *See* Defendants' Reply in Support of Cross Motion for Summary Judgment, *Nio*, No. 17-cv-0998 (ESH). While these cross-motions may not necessarily result in a decision on the merits, they show that *Nio* is progressing. *See Gampala*, 2018 U.S. Dist. LEXIS 168328, at *16 ("because *Nio* has been pending longer, it may well proceed more quickly"). *Contra Pride*, 719 F.3d at 1137 (refusing to stay case when related class action had already been litigated for twelve years).

While Plaintiff's claims listed above (Counts I–IV and VI–VIII) are already encompassed by the *Nio* class action litigation, Plaintiff also alleges the DOD Defendants have "insisted" he become a "stateless person" and renounce his Indian citizenship before his naturalization application proceeds. (#1 ¶ 79.) Plaintiff maintains that, if he were to do this, he would no longer have a valid passport, and his current H1B Visa would be voided, rendering him an unauthorized immigrant and potentially putting him at risk for removal from the United States. (#1 ¶¶ 79, 81, 88.)

These allegations regarding the renunciation of Plaintiff's native citizenship are not directly before the *Nio* court. They turn on different determinations of fact and seek to resolve different legal issues from those raised by the *Nio* class action.[7] The Northern District of California addressed this issue in *Wang*. Like Plaintiff, Wang alleged that the DOD sought to have him renounce his Chinese citizenship, which would have left him in a position of statelessness if his naturalization application was never adjudicated. *Wang*, 2018 U.S. Dist. LEXIS 157405, at *20. Wang asked the court to equitably estop the DOD from making him renounce his Chinese

---

[7] Plaintiff's breach of contract claim, seeking monetary damages and promotion in the Army, in addition to "specific enforcement," is also not encompassed by the *Nio* class action. However, it will be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) for the reasons discussed *infra*.

citizenship and relinquish his Chinese passport until he was naturalized as a United States citizen. *Id.* In allowing Wang's claim relating to renouncing his native citizenship to proceed, the court reasoned that, "[w]hile there [was] some contextual overlap between [the] issue and *Nio*," Wang was still making a "discrete, individual" claim for relief. *Id.*; *see also Pride*, 719 F.3d at 1137 (a "discrete, individual claim" for relief could not be delayed simply because a pending class action sought "systemic reform relating to the same general subject matter"); *Crawford v. Bell*, 599 F.2d 890, 891 (9th Cir. 1979) (inappropriate to dismiss portions of a complaint raising issues not addressed in the related class action).

The Court sees no reason not to adopt the sound reasoning of the Northern District of California in *Wang*, especially given the severe consequences Plaintiff may face, if his allegations regarding his Indian citizenship are proven true. The claim related to the alleged demand that Plaintiff renounce his Indian citizenship shall be allowed to proceed.

  **B.** <u>Defendants' Motion to Dismiss Plaintiffs' Statutory Right to Naturalize, Breach of Contract, and Equitable Estoppel Claims Pursuant to Rule 12(b)(1) and/or 12(b)(6)</u>

Defendants argue that Plaintiff's claims for violation of the statutory right to naturalize, breach of contract, and equitable estoppel should be dismissed pursuant to Rule 12(b)(1) and 12(b)(6). (#15 at 11–16.)

  **1.** <u>Violation of the "Statutory Right to Naturalize" (Count IV)</u>

While Plaintiff makes a claim pursuant to the APA (Count I) and a claim for constitutional injury pursuant to the Fifth Amendment (Count III), he also makes a separate claim (Count IV), that "Defendants' interference with, and failure to adjudicate" his naturalization application is a violation of the INA, APA, and the Constitution. (#1 ¶ 103.) Plaintiff alleges that "there is no other relief available" to him other than the Court's ordering the DHS and USCIS to "do their duty and

adjudicate [his naturalization] application" and ordering the DOD "to cease their interference." (#1 ¶ 104.)

Defendants respond by correctly pointing out that, in addition to Count IV's overlap with Count I (alleged violation of the APA) and Count III (alleged constitutional violations), 8 U.S.C. § 1440 does not explicitly state that a MAVNI's naturalization application must be adjudicated within a particular period of time. (#15 at 16.) However, taking all the factual allegations in Plaintiff's complaint "as true and drawing all reasonable inferences in his favor," Plaintiff appears to be taking a broader approach in also arguing that Defendants violated the INA, in addition to the APA and the Constitution, by requiring the enhanced security screenings and holding his naturalization application until they are all completed. Regardless of whether Defendants' actions are characterized as INA, APA, or constitutional violations, or as a combination of all three, and notwithstanding the fact that Count IV repeats various allegations already in Counts I and III, the *Nio* court is already considering whether Defendants have the statutory and/or constitutional authority to implement the screenings and place the holds. Therefore, Count IV, the alleged violation of Plaintiff's "statutory right to naturalize," is not appropriate for dismissal under Rule 12(b)(1) or 12(b)(6). Rather, it will be stayed consistent with the other federal courts' decisions in *Wang*, *Hu*, and *Gampala*, 2018 U.S. Dist. LEXIS 168328, at **2–3 (staying case where the plaintiff made the same arguments under the INA, APA, and the Constitution).

### 2.      Breach of Contract (Count V)

Plaintiff's breach of contract claim, not encompassed in the *Nio* class action litigation, alleges that, by creating "unlawful hurdles" to his naturalization, the DOD has caused the United States to breach his enlistment contract. (#1 ¶ 24.) He seeks "specific enforcement" of the enlistment contract, including the DHS' "timely processing of his naturalization application . . . in

accordance with the law"; "the cessation of all interference and non-cooperation with the naturalization application process" by the DOD; "naturalization upon successful completion of the naturalization process"; and his "commissioning as a Captain" in the United States Army Reserve upon naturalization. (#1 ¶ 27.) Plaintiff also seeks money damages, specifically "the pay differential between an Army Captain and an enlisted Specialist Fourth Class" over the term of his service, "with a top limit of $10,000." (#1 ¶ 28.)

Courts generally apply common law principles to determine whether a military enlistment contract has been breached. *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 279–80 (D.D.C. 2005) (citations omitted). In order to prevail on a breach of contract claim in Massachusetts, a plaintiff must show "the existence of a valid and binding contract, that the defendant breached the contract's terms, and the plaintiff suffered damages as a result of the breach." *Scholz v. Goudreau*, 901 F.3d 37 (1st Cir. 2018) (citing *Brooks v. AIG SunAm. Life Assurance Co.*, 480 F.3d 579, 586 (1st Cir. 2007)); *see also Qualls*, 357 F. Supp. 2d at 282 (citation omitted) (stating that the plaintiff must allege "the existence of a valid and enforceable contract between the plaintiff and defendant, the obligation of defendant thereunder, a violation by defendant, and damages resulting to plaintiff from the breach").[8]

To establish a breach, plaintiffs "must do more than allege, in conclusory fashion, that the defendant breached the contract[.]" *Brooks*, 480 F.3d at 586. In order to survive a motion to

---

[8] The parties have not briefed the issue of what body of contract law should apply. While many courts have applied general principles of contract law "because of the unique relation between the military and those in the armed services, and the need for a consistent interpretation of enlistment contracts[,]" others have applied the law of the forum, without explaining why. *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 282 n.2 (D.D.C. 2005) (citing *Brown v. Dunleavy*, 722 F. Supp. 1343, 1349 (E.D. Va. 1989), and *Castle v. Caldera*, 74 F. Supp. 2d 4, 9 (D.D.C. 1999)). The Court does not decide this question, because regardless of which contract law is applied in the present case, the outcome is the same. *See id.*

dismiss, the plaintiff must describe, with "'substantial certainty,' the specific contractual promise the defendant failed to keep." *Id.* (quoting *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 38 (1st Cir. 2007) (plaintiffs must, at a minimum, "explain what obligations were imposed on each of the parties by the alleged contract"), and *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 195 (1st Cir. 1996) ("[c]onclusory statements" that defendant and its executives "failed to meet their contractual requirement . . . are insufficient to satisfy the pleading requirements")). It is well-settled that where, as here, a contract is made between the government and an individual, the law in effect at the time of the contract becomes part of the contract. *U.S. v. Larionoff*, 431 U.S. 864, 877 (1977); *Caola v. U.S.*, 404 F. Supp. 1101, 1106 (D. Conn. 1975) (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85 (1947)).

Plaintiff fails to state a claim for breach of contract for several reasons. First, and most importantly, Plaintiff fails to cite, let alone describe with "substantial certainty," any specific contractual promise the Defendants failed to keep pursuant to his enlistment contract. While Plaintiff maintains that the portion of his enlistment contract, requiring him "to apply for U.S. citizenship as soon as the Army . . . certified [his] honorable service," implied that the Army wanted him to become a citizen and was "contractually bound not to thwart those efforts[,]" (#20 at 5), Plaintiff cannot cite any specific portion of the enlistment contract which required Defendants to adjudicate his naturalization application within any specific time, provide him with a pay raise, or promote him from a Specialist Fourth Class to a Captain. Although 8 U.S.C. § 1440 invites those without permanent legal residence serving in the armed forces to apply for naturalization, without regard to age, period of residence in the United States, or length of military service, it does not specifically guarantee citizenship, a timeline for adjudication, pay raises, or promotion in the armed forces. Similarly, while 8 U.S.C. § 1571(b), cited in Plaintiff's notice of

erratum (#23 at 1–2), states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application," 8 U.S.C. § 1571(b), "Congress stopped short of mandating a time limit" for adjudication. *Da Cruz v. Riordan*, No. 11-10818-DPW, 2011 U.S. Dist. LEXIS 54085, at *5 (D. Mass. May 11, 2011) (quoting *Aziz v. Chadbourne*, No. 07-11806-GAO, 2007 U.S. Dist. LEXIS 76002, at *2 n.2 (D. Mass. Oct. 15, 2007)). Accordingly, Plaintiff's breach of contract claim will be dismissed pursuant to Rule 12(b)(6). *See Tremblay v. Marsh*, 750 F.2d 3, 5 (1st Cir. 1984) (plaintiff failed to demonstrate sufficient showing of likelihood of success on the merits on his breach of contract claim when "plain terms" of his military contract contained nothing about his being promoted); *Martelon v. Walker*, 568 F. Supp. 672, 674 (D. Co. 1983) (granting summary judgment for the defendants, when the plaintiff did not cite, and the court did not find, any provisions of plaintiff's military contract guaranteeing his assignment to a specific military unit, or limiting the defendants' ability to reassign him when necessary).

There are other reasons why Plaintiff's breach of contract claim must be dismissed. First, it is well-settled that, in order to be liable for breach of contract, one must be a party to that contract or, alternatively, be responsible for the alleged breach. *See*, *e. g.*, *Scholz*, 901 F.3d at 44 (defendant did not breach contract, when he himself did not direct, and had no role in, the advertising activity allegedly constituting the breach). Defendants correctly point out that the DOD, the DHS, and USCIS are not parties to Plaintiff's enlistment contract. While Plaintiff may be able to make an argument that the DOD, the DHS, and USCIS have aided in the alleged breach by failing to adjudicate his naturalization application, this argument is tenuous at best, given that Plaintiff fails to cite the "specific contractual promise" related to his allegations.

Furthermore, to the extent that Plaintiff is asking for monetary damages not to exceed $10,000, "money damages are not an available remedy for the government's breach of an enlistment contract." *Jablon v. U.S.*, 657 F.2d 1064, 1066–67 (9th Cir. 1981). While courts generally apply common law principles to determine whether a military enlistment contract has been breached and can provide remedies such as release, courts "have no authority" to order the government to pay damages for a breach of a military enlistment contract, because those in the military are paid under statutory, rather than contract, principles. *Id.* at 1067; *see also Bell v. U.S.*, 366 U.S. 393, 401 (1961) (emphasis added) (the common law has "no place in the area of military *pay*"). Relatedly, district courts lack the authority to promote MAVNIs in Plaintiff's position to active duty status to entitle them to a higher pay grade. *See, e.g.*, *Jablon*, 657 F.2d at 1067 n.4 (citing *Covington v. Anderson*, 487 F.2d 660 (9th Cir. 1973) (noting that the court could not order the Air Force to call plaintiff to active duty status so he would be entitled to variable incentive pay)). Plaintiff's breach of contract claim (Count V) will be dismissed in its entirety.

### 3. Equitable Estoppel (Count VI)

Finally, Plaintiff alleges in his complaint that the DOD should be "equitably estopped from instructing" the DHS and USCIS to withhold adjudication of his naturalization application, because they made "factual representations concerning enlistment and naturalization" to him, on which he has "reasonably relied." (#1 ¶¶ 112–14.) Defendants respond by arguing that "[t]he Supreme Court has been clear" that naturalization through equitable estoppel is precluded. (#15 at 12 (citing *Pangilinan v. INS*, 486 U.S. 875, 883–84 (1988) (noting that federal courts do not have the power to confer citizenship absent a specific authorizing statute)).) Defendants further argue that, even if federal courts did have the authority to naturalize citizens through equitable estoppel, the remedy of estoppel is not available against the government under these circumstances. (#15 at

13.) Specifically, the decision to require MAVNIs to undergo enhanced military security screenings before their N-400 applications can be processed "is not and cannot possibly be construed as 'affirmative misconduct[.]'" (#15 at 13 (quoting *Frillz, Inc. v. Lader*, 104 F.3d 515, 518 (1st Cir. 1997)).)

Defendants' argument is flawed in several respects. Although Plaintiff does, in fact, seek "naturalization upon successful completion of the naturalization application process[,]" (#1 ¶¶ 27), Plaintiff is also asking for specific, additional forms of relief. (#1 ¶¶ 25–29.) Like the members of the *Nio* class action and the individual plaintiffs in *Wang*, *Gampala*, and *Hu*, Plaintiff is asking the Court to equitably estop the DOD from instructing the DHS and USCIS to suspend the processing of his naturalization application pending the results of the DOD's enhanced military security screenings. (#1 ¶¶ 27, 111–14.)

Furthermore, while Defendants accurately point out that, in order to make a claim for estoppel against the federal government, a party must, "at a minimum[,]" show that the government engaged in "affirmative misconduct" on which he or she "reasonably relied," *Frillz*, 104 F.3d at 518 (quoting *U.S. v. Ven-Fuel, Inc.*, 758 F.2d 741, 761 (1st Cir. 1985)), what constitutes affirmative misconduct "remains elusive." *U.S. SEC v. Nothern*, 400 F. Supp. 2d 362, 366 (D. Mass. 2005) (citing *Schweiker v. Hansen*, 450 U.S. 785 (1981) (Marshall, J., dissenting)). The First Circuit has held that the determination of whether an equitable estoppel claim can be made is a fact-specific one. *Akbarian v. INS*, 669 F.2d 839, 845 (1st Cir. 1982) ("only in light of precise factual findings as to what actually took place can a meaningful determination of the legal aspects of [an] estoppel claim be made"); *see also INS v. Miranda*, 459 U.S. 15, 18 (1982) (court unable to say that delay in processing plaintiff's application for permanent residence amounted to affirmative misconduct absent specific evidence that delay was unwarranted).

Here, Plaintiff alleges that the DOD "actively thwarted his naturalization" and alludes to the fact that the Defendants may have engaged in affirmative misconduct because Congress has not authorized them to impose additional requirements for naturalization, other than the FBI and DCII background checks, and the elevated DOD security screenings are not related to any specific security concerns. (#1 ¶¶ 24, 34, 80.) Accepting all the facts set forth in Plaintiff's complaint as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has stated a plausible claim for relief. Consistent with other federal courts' decisions in *Wang*, *Gampala*, and *Hu*, Plaintiff's claim for equitable estoppel will be stayed pending the resolution in *Nio*. *See, e.g.*, *Wang*, 2018 U.S. Dist. LEXIS 157405, at **8, 21 (staying the plaintiff's specific claim for equitable estoppel as related to the adjudication of his naturalization application due to *Nio*).

## V. <u>Conclusion</u>

For the reasons stated, the Court grants in part and denies in part Defendants' motion to dismiss the case without prejudice, and grants in part and denies in part a stay of the case pending the resolution of *Nio*. Plaintiff's claims for mandamus (Count I); violations of the APA (Count II); constitutional injury pursuant to the Fifth Amendment (Count III); deprivation of the statutory right to naturalize (Count IV); equitable estoppel as related to Defendants' withholding the adjudication of his naturalization application (Count VI); declaratory relief (Count VII); and preliminary and permanent injunctive relief (Count VIII) are STAYED, pending the District of Columbia's resolution in *Nio*, No. 17-cv-0998 (ESH). Plaintiff's claims related to the renunciation of his Indian citizenship are permitted to proceed. Plaintiff's claim for breach of contract (Count V) is DISMISSED without prejudice.

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge

May 6, 2019